THOMPSON, Presiding Judge.
S.K. (“the mother”) appears to appeal from a “temporary order” entered by the Montgomery Juvenile Court (“the juvenile court”) after an emergency hearing held on December 21, 2012, awarding custody of N.B., Jr. (“the child”), to N.B., Sr. (“the father”), subject to the mother’s unsupervised visitation. The temporary order was effective until a final hearing that was held on May 3, 2013. As is explained later in this opinion, the December 21, 2012, order addressed in the mother’s brief is a pen-dente lite order, but a later order, from which the appeal is timely taken, supports the appeal, and we have addressed the mother’s arguments with regard to that final judgment.
The mother, who is represented by counsel, first contends that the juvenile court, the court in which she filed this *29 action, did not have jurisdiction over this matter because, she says, it is a custody dispute between the parents. The record is not clear as to what transpired before the mother filed a “dependent complaint” on October 1, 2012, which was assigned case number JU-12-792.01. However, it is apparent that the mother had had some involvement with the Department of Human Resources (“DHR”) before filing the October 1, 2012, complaint because, in that complaint, she states that “[t]he child was taken pursuant to a DHR safety plan” that was implemented after “it was reported” that the mother was physically abusing an older child. In her complaint, which is actually a form with boxes for the complainant to check, the mother alleges that the child’s parents were unable to discharge their responsibilities to and for the child.. She then requested custody of the child.
On November 27, 2012, the father filed a “dependent complaint,” which was assigned case number JU-12-792.02, but which was obviously a counterclaim for custody of the child and not a pleading intended to initiate a separate action. In his form complaint, the father, like the mother, indicated that the child’s parents were unable to discharge their responsibilities to and for the child. He alleged that the mother’s boyfriend was abusing the mother in the presence of the mother’s children and that the child was fearful of being in the home. The father also stated that DHR had placed the child in his custody pursuant to a safety plan.
In an order entered on September 17, 2013 (“the 2013 judgment”), the juvenile court stated that, after the emergency hearing held on December 21, 2012, it entered an order holding that the father was to retain temporary custody until the' final hearing, which, for various reasons, was continued until May 3, 2013. The 2013 judgment does not explicitly contain a finding of dependency. In the 10-page 2013 judgment, the juvenile court set forth the concerns it had regarding domestic violence in the mother’s house, its concerns that the child “may not have the appropriate supervision” at the mother’s house, and its concerns about the influence the mother’s older child had over the child. The juvenile court noted that the older child received poor grades in school, had taught the child how to “shoot dice,” and had smoked marijuana at the house in the child’s presence when the older child was supposed to be watching over the child and another sibling. The juvenile court further noted that the mother appeared to be “intimidated” by the older child and found, that the relationship between the older child and the mother was “of concern, as it impacts the whole family.”
The juvenile court stated that it had concerns about the father, as well. It found that the father lived with his parents, his sister, and her minor child, that he was unemployed, and that he had admitted to using illegal drugs. In fact, the juvenile court stated, the father had twice tested positive for marijuana since this case began. Although the father claimed that he had stopped using marijuana when he obtained custody of the child, the juvenile court stated that it was “of the opinion that more evidence [was] needed to show a sustained period wherein the father has not used marijuana.” Accordingly, the juvenile court stated that it was “not prepared to close the file at this time due to [its] desire to confirm the father’s drug-free status.” The juvenile court ordered the father to submit to random drug tests each month and to submit the results of those tests to the clerk of the juvenile court and counsel for each party within seven days of publication of the results. The juvenile court was to be given a quar *30 terly report regarding the results of the father’s drug tests.
Because of the .01 designation appearing on the mother’s case number, it appears that the issue of the child’s custody, child support,[1] or paternity had previously come before the juvenile court, although we cannot be sure of that from the record before us. We note that, in her “dependent complaint,” the mother indicated that she and the father had “never married.” A juvenile court has original jurisdiction over actions to establish paternity, custody, and child support. § 12-15-115(a)(6), Ala.Code 1975. In her brief on appeal, the mother does not assert that the juvenile court had not considered one of those issues before the initiation of the present action. Instead, she argues that “the juvenile code eliminated custody disputes between parents” as matters over which a juvenile court could assert original jurisdiction and that § 12-15-117, Ala.Code 1975, limited a juvenile court’s “retained” jurisdiction to cases in which a child has been adjudicated dependent, delinquent, or in need of supervision. However, in § 12-15-117.1(a), Ala. Code 1975, the legislature revised the juvenile court’s continuing jurisdiction, providing:
“The Legislature finds that it was its original intent in the adoption of the Alabama Juvenile Justice Act (Act 2008-277) for a juvenile court to retain continuing jurisdiction in all cases in its jurisdiction to the extent provided by law. Act 2012-383 is curative and shall apply retroactively to ratify and confirm the exercise of continuing jurisdiction of the juvenile court to modify and enforce a judgment in cases filed in juvenile court on or after January 1, 2009, and prior to May 14, 2012. Any order of a juvenile court issued while exercising jurisdiction pursuant to this subsection during this time shall be deemed valid.”
It is the burden of the mother, as the appellant, to ensure that the record on appeal contains sufficient evidence to warrant the relief requested. See J.B. v. Cleburne Cnty. Dep’t of Human Res., 992 So.2d 34, 40-41 (Ala.Civ.App.2008). The record on appeal does not contain any information from which this court could conclude that the juvenile court did not have jurisdiction over this matter.
“As we have stated on many prior occasions, ‘[a]n appellate court is confined in its review to the appellate record, that record cannot be “changed, altered, or varied on appeal by statements in briefs of counsel,” and the court may not “assume error or presume the existence of facts as to which the record is silent.” ’ Beverly v. Beverly, 28 So.3d 1, 4 (Ala.Civ.App.2009) (quoting Quick v. Burton, 960 So.2d 678, 680-81 (Ala.Civ.App.2006)).”
Dreading v. Dreading, 84 So.3d 935, 937 (Ala.Civ.App.2011). Moreover, based on the involvement of DHR and the parties’ respective complaints in which each indicated that the child was dependent, we cannot say that the juvenile court did not have jurisdiction in this case.
The mother also contends that the juvenile court erred in awarding custody of the child to the father. Based on the mother’s statement of the case, we could assume that the mother is referring to the award of pendente lite custody in the temporary order entered on December 21, 2012 (“the 2012 order”).[2] However, in her brief, the *31 mother cites portions of the transcript of the May 3, 2013, hearing that resulted in the 2013 judgment. In the 2013 judgment, the juvenile court made findings of fact and concluded that, at present, the child “is better off in the custody of the father.” Accordingly, the juvenile court ordered that physical custody of the child was to remain with the father, subject to the mother’s visitation. However, the father was ordered to submit to monthly drug tests, and the matter was set for further review in September 2014.
Regardless of whether the mother is appealing from the 2012 order or the 2013 judgment, the mother’s brief fails to meet the requirements of Rule 28(a)(10), Ala. R.App. P., as to this issue, because she cites no legal authority and she fails to make a legal argument. The entire argument is four paragraphs in length, the last two paragraphs are composed of three sentences, and the argument contains no legal argument or citation to authorities. We note that this “argument” is the only place in the mother’s appellate brief that mentions any of the underlying facts of this matter, and it is far from a full recounting of the relevant facts contained in the record. See Rule 28(a)(7), Ala. R.App. P. The mother has left to us the job of reviewing the record in its entirety and crafting a legal argument that supports her contention that the juvenile court erred in awarding the father custody. As our supreme court has said repeatedly, “ ‘ “[i]t is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.” ’ ” Ex parte Borden, 60 So.3d 940, 943 (Ala.2007) (quoting Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003), quoting in turn Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)). Because the mother has cited no legal authority indicating that the juvenile court erred in adjudicating the child’s custody, we need not consider this argument. However, out of an abundance of caution, we note that the evidence of the mother’s and the father’s conduct contained in the record and set out above supports the juvenile court’s determination that, at present, the child “is better off in the custody of the father.”
Moreover, to the extent the mother is appealing from the 2012 order awarding custody of the child to the father until the May 2013 hearing, we note that that intervening hearing and the entry of the 2013 judgment renders moot any issue regarding the propriety of the 2012 order. Lang v. Lang, 61 So.3d 311, 317 (Ala.Civ.App.2010) (citing Auburn Med. Ctr., Inc. v. East Alabama Health Care Auth., 908 So.2d 243, 245-46 (Ala.Civ.App.2003) (holding that a court will not decide a legal issue that is irrelevant to the outcome of case)).
For the reasons set forth above, the 2013 judgment, the juvenile court’s final judgment in this matter, is affirmed.
AFFIRMED.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, with writing.

. The record indicates that the father had at one time been in arrears on his child-support obligation regarding the child. .It follows, therefore, that, at some point, a court had ordered the father to pay child support.

. The mother’s statement of the case reads:
*31 "The matter from which this appeal is taken relates to the Order issued by the Juvenile Court of Montgomery County following an Emergency Hearing on December 21, 2012 in which issued a temporary order awarding custody of N.B., Jr., to N.B., Sr., the Appellee, with the Appellant, S.K. háving unsupervised visitations until the final hearing that was subsequently held on May 3, 2013. It is from that Order this appeal is taken.”