MOORE, Judge.
C.E., the mother of R.G. (“the child”), filed a petition seeking a writ of mandamus compelling the Walker Juvenile Court to vacate its September 23, 2014, order finding the child to be dependent and awarding “temporary custody” of the child to M.G., the child’s father. For the reasons discussed infra, we treat the mother’s petition as an appeal, and we affirm in part and reverse in part.

Background

In December 2008, the father’s paternity of the child was adjudicated by the St. Clair Juvenile Court; in that action, the mother was designated as the child’s primary physical custodian and the father was ordered to pay child support. On September 8, 2014, the father filed in the St. Clair Juvenile Court a verified petition alleging that the child was dependent and seeking custody of the child. In his petition, the father asserted that the mother and her husband, B.H., were abusing the child or using excessive corporal punishment on the child to the extent that the father had observed “marks and whelps” on the child’s body the previous weekend. As a result, the father sought an ex parte order granting him temporary custody of the child on an emergency basis. On that same date, the St. Clair Juvenile Court transferred the father’s petition to the Walker Juvenile Court based on the father’s assertion that neither parent continued to reside in St. Clair County.
On September 9, 2014, after the action had beep transferred to the Walker Juvenile Court (“the juvenile court”), the father filed an amended petition to modify custody and an “amended motion for ex parte pendente lite custody”; that petition and that motion were unverified. On September 10, 2014, the juvenile court entered an ex parte “temporary custody order” placing the child with the father on an emergency basis. In that same order, the juvenile court scheduled a hearing for the following day, i.e., September 11, 2014, and appointed a guardian ad litem to represent the child’s best interests.
On September 11, 2014, the day of the hearing, the father filed a verified amended petition to modify custody and a verified “amended motion for ex parte penden-te lite custody.” On September 23, 2014, the juvenile court entered an order indicating that, at the time of the September 11, 2014, hearing, the mother’s attorney had been running late due to a scheduling conflict and that, after waiting a reasonable amount of time, the juvenile court had proceeded to hear evidence without the mother’s attorney being present. In its order, the juvenile court found the child to be dependent, awarded physical custody of the child to the father pending a final hearing, ordered the child’s stepfather not to discipline the child in any form, and scheduled a final hearing for November 6, 2014.
On October 7, 2014, the mother timely filed her petition for a writ of mandamus; as noted earlier, and for the reasons dis *1064 cussed infra, we have elected to treat the mother’s petition as an appeal. The mother asserts that, because, she alleges, the father’s pleadings were unverified, the juvenile court never acquired subject-matter jurisdiction and that, therefore, the juvenile court’s September 10, 2014, order awarding the father ex parte emergency custody and all subsequent orders were void; that the juvenile court violated her due-process rights by conducting the September 11, 2014, hearing without her attorney present; and that the juvenile court violated her due-process rights because she was given no notice that the juvenile court would address the child’s dependency at the September 11, 2014, hearing.

Analysis

Section 12-15-114(a), Ala.Code 1975, provides that “[a] dependency action shall not include a custody dispute between parents.” Because the father, the noncustodial parent, alleged in his initial petition that the child was dependent as to the mother, the child’s custodial parent, we must consider whether the juvenile court properly exercised jurisdiction over the father’s petition.
In S.K. v. N.B., 160 So.3d 27 (Ala.Civ.App.2014), the father in that case filed a dependency petition alleging that the mother’s boyfriend was abusing the parties’ child, that the child was fearful of being in the mother’s home, and that the Montgomery County Department of Human Resources had placed the child in his custody pursuant to a safety plan. Id. at 29. This court concluded that, although the father’s allegations were directed at the child’s custodial parent, they were sufficient to invoke the juvenile court’s dependency jurisdiction.[1] Id. at 32. See also T.K. v. M.G., 82 So.3d 1 (Ala.Civ.App.2011) (father’s allegations that mother was using drugs in the presence of the parties’ child were sufficient to trigger juvenile court’s dependency jurisdiction despite fact that both parents were legally obligated to care for the child).
The father’s petition, like the one in S.K, supra, alleged that the mother and the child’s stepfather had abused the child to the point of leaving welts and marks on the child and causing the child to be fearful. As in S.K., supra, we conclude that, in this case, the father’s allegations fell within the juvenile court’s dependency jurisdiction.[2] See, e.g., Ala.Code 1975, § 12-15-102(8) (defining a “dependent child”).
We also must consider whether the mother’s petition should be treated as an appeal. The father filed an “emergency” petition for temporary custody of the child, alleging that the child was in imminent threat of physical harm due to the abuse or excessive corporal punishment meted out by the mother and/or the mother’s husband. Alabama Code 1975, § 12-15-138, provides that a juvenile court may, on an emergency basis, enter an order to protect the health and safety of a child who is the subject of a dependency pro *1065 ceeding. According to Ala.Code 1975, § 12-15-139,
“[a] protection or restraint order may be issued by the juvenile court, after notice and a hearing, upon proper showing by a preponderance of the evidence that an order is necessary to protect the health or safety of the child subject to a juvenile court proceeding or is otherwise in the best interests of the child.”
We conclude that the juvenile court conducted the September 11, 2014, hearing for the purpose of complying with the foregoing statutory provisions.
In its September 23, 2014, order, the juvenile court granted the father’s petition for temporary custody, and it also entered certain injunctions designed to protect the health and safety of the child. See Ala.Code 1975, § 12-15-138 (“The juvenile court may, at any time after a dependency petition has been filed, or on an emergency basis, enter an order of protection or restraint to protect the health or safety of a child subject to a proceeding.”); Ala.Code 1975, § 12-15-140(a) (“The protection or restraint order may set forth reasonable conditions of behavior to be observed by a person who is a parent, legal guardian, legal custodian, or other person legally responsible for the care of the child subject to a juvenile court proceeding, or the spouse of the parent, or spouse of any other person legally responsible for the care of the child, or relatives of any of the above, or residents of the home of the child, or any other person.”); and Ala.Code 1975, § 12-15-140(b) (listing various examples of restraint orders that a juvenile court may impose). Rule 4(a)(1)(A), Ala. RApp. P., provides that a party may appeal from an interlocutory order granting or refusing an injunction within 14 days. Because the juvenile court’s September 23, 2014, order transferred custody of the child to the father and placed certain restraints on the mother and her husband as to their care of the child pursuant to the foregoing statutory provisions, we conclude that the mother was entitled to appeal from that order. We, therefore, treat her mandamus petition as an appeal under Rule 4(a)(1)(A), Ala. R.App. P.
On appeal, the mother first asserts that the juvenile court’s ex parte award of emergency custody to the father is void because, she alleges, the father’s pleadings were unverified and, therefore, failed to trigger the juvenile court’s emergency jurisdiction. Lack of subject-matter jurisdiction may be raised at any time, even for the first time on appeal. Ex parte Ortiz, 108 So.3d 1046, 1048 (Ala.Civ.App.2012). Alabama Code 1975, § 12-15-141, provides:
“The juvenile court may enter an ex parte order of protection or restraint on an emergency basis, without prior notice and a hearing, upon a showing of verified written or verbal evidence of abuse or neglect injurious to the health or safety of a child subject to a juvenile court proceeding and the likelihood that the abuse or neglect will continue unless the order is issued. If an emergency order is issued, a hearing, after notice, shall be held within 72 hours of the written evidence or the next judicial business day thereafter, to either dissolve, continue, or modify the order.”
Although the mother correctly asserts that an emergency ex parte order of protection or restraint may be entered only if it is based upon “verified written or verbal evidence,” she incorrectly asserts that the father failed to file verified pleadings. The father’s initial pleading,, filed in the St. Clair Juvenile Court, was verified. In that verified petition, the father alleged that the child was being subjected to abuse in the mother’s home and that an ex parte *1066 emergency order was necessary to protect the child. Thus, the father’s initial pleading triggered the juvenile court’s emergency jurisdiction, and, pursuant to § 12-15-141, the juvenile court was authorized to enter an emergency order of protection for the child. The fact that the father later filed an unverified amended petition and an unverified motion (which he verified by amendment two days later) asserting the same allegations does not detract from our holding.
The mother next asserts that the juvenile court violated her procedural-due-process rights by conducting the September 11, 2014, hearing without her attorney and by finding the child to be dependent without providing her specific notice that the juvenile court would address dependency at the September 11, 2014, hearing. We address those arguments together.
In Thorne v. Thorne, 344 So.2d 165 (Ala.Civ.App.1977), this court recognized that:
“ ‘In dealing with such a delicate and difficult question — the welfare of a minor child — due process of law in legal proceedings should be observed. These settled courses of procedure, as established by our law, include due notice, a hearing or opportunity to be heard before a court of competent jurisdiction .... ’
[[Image here]]
“... [I]n deciding whether a parent has a right to due process when a party to a proceeding to determine custody of his or her minor child, the court will consider three factors: the nature of the right involved, the nature of the proceeding, and the possible burden on the proceeding.”
Thorne, 344 So.2d at 169 (quoting Danford v. Dupree, 272 Ala. 517, 520, 132 So.2d 734, 735 (1961)).
After recognizing that a parent’s right to custody of his or her children is a protected right, this court, in Thorne, addressed the nature of the proceeding at issue and the burden that notice would place on the proceeding in the context of due process. This court stated:
“With regard to the nature of the proceeding, the question is whether affording due process to the parent of a child in a custody proceeding interferes with the court’s responsibility to protect the welfare and best interest of the child. This requires a balancing of the right of the parent, discussed above, against the interest of the State of Alabama, since the child becomes a ward of the court, which is in turn an arm of the state. It should be kept in mind that at issue is the due process requirement of notice to the parent that his or her right to custody of the child is to be considered by the court.
[[Image here]]
“Although the state has a compelling interest in determining the best interest and welfare of a child, the interest is not compelling enough to allow the determination to be made without notice to the child’s parents. The purpose of requiring notice is to preserve the fairness of the hearing; and it is of vital importance to the child, as well as the parent, that the hearing be fair. A parent must have notice of the issues the court will decide in order to adduce evidence on those issues before the court, to give the court a basis from which a determination most beneficial to the child can be made. Otherwise, the child, rather than being helped, might even be harmed.
[[Image here]]
“Finally, we consider the burden requiring notice would place on the proceeding. We think such burden, if any, would be minimal. Only in rare circum *1067 stances would granting a continuance result in detriment to the child. In the few situations where it appears the actual health and physical well-being of the child are in danger, the court has authority ... to make a temporary grant of custody until a final determination can be made. Thus, we conclude the parental right to due process far outweighs any burden that would be placed on the proceeding to determine that right.”
Thorne, 344 So.2d at 170-71.
In Gilmore v. Gilmore, 103 So.3d 833 (Ala.Civ.App.2012), this court applied the above-stated principles to reverse a trial court’s purported final judgment entered after an ore tenus hearing in a custody-modification action. Although the trial court in Gilmore had provided the parties with notice of that hearing, that notice, issued only one day after the mother had filed her custody-modification petition, indicated that the hearing was to address the mother’s motion for pendente lite custody. Gilmore, 103 So.3d at 833. In Gilmore, this court stated:
“[Tjhere was no indication in the record that the trial court intended to consider the parties’ claims seeking a final custody determination at the February 2, 2012, hearing. Accordingly, we conclude that the trial court erred to reversal in entering a judgment on the merits without affording the parties an opportunity to fully litigate the action on the merits.”
103 So.3d at 835-36.
In N.J.D. v. Madison County Department of Human Resources, 110 So.3d 387 (Ala.Civ.App.2012), this court again relied on the above-stated principles to reverse a juvenile court’s purportedly final judgment in which it adjudicated a child to be dependent, placed the child with a relative, and closed the case to further review. This court concluded that, because he had received no notice that a permanency hearing would be held but, rather, had received notice that a review hearing would be, conducted, the father in that, case had been deprived of due process. Id. at 393. The court stated:
“The father’s attorney came to the hearing prepared for a review hearing and not for a final dispositional hearing for which she had no notice. Thus, we conclude that, because the father was not notified of the nature of the proceedings, he was effectively denied the opportunity to present the evidence [that he believed was relevant].... It defeats the notion of fair play to prevent the father from presenting [that evidence] to the trial court.... Accordingly, we conclude that, in failing to notify the father of the nature of the proceedings, the trial court deprived the father of his right to due process,”
Id. at 394. See also A.D.G. v. D.O., 160 So.3d 783 (Ala.Civ.App.2014) (failure of juvenile court to notify mother that “compliance/dispositional” hearing would proceed as a permanency hearing violated mother’s due-process rights); and M.E. v. Jefferson Cnty. Dep’t of Human Res., 148 So.3d 737 (Ala.Civ.App.2014) (juvenile court’s holding of a permanency hearing in child-dependency proceeding, after it had notified mother that scheduled hearing was a “review hearing,” violated mother’s right to due process).
In this case, the juvenile court scheduled a hearing to be held three days after receiving the father’s dependency petition and one day after granting the father ex parte emergency custody. The juvenile court’s notice, contained in the juvenile court’s ex parte “temporary custody order,” did not indicate that the purpose of the hearing was to address the father’s dependency allegations. Rather, the juvenile court awarded the father ex parte *1068 emergency custody “pending a hearing on the motion for temporary custody” and stated:
“[The father] is hereby authorized to make any and all such decisions as are reasonable and necessary regarding the health, welfare, education and maintenance of the minor child pending a hearing set on the ll[th] day of September, 2014, at 2:30 p.m
As in Gilmore and N.J.D., supra, the language in the juvenile court’s September 10, 2014, order afforded the mother no notice that the juvenile court intended to address or resolve the issue of the child’s dependency at the September 11, 2014, hearing. We, therefore, conclude that the juvenile court deprived the mother of her constitutionally protected due-process rights by finding the child to be dependent based on the evidence presented at the September 11, 2014, hearing.
We, however, reject the mother’s argument that the juvenile court deprived her of due process by conducting the hearing in the absence of her attorney. Based on the language contained in the juvenile court’s September 10, 2014, order, the mother was clearly apprised that the juvenile court intended to hear evidence at the September 11, 2014, hearing to determine whether to leave in place, pending a final hearing, its ex parte order placing emergency custody of the child with the father. The mother, in fact, attended that hearing and was afforded the opportunity to present evidence in opposition to the father’s allegations that; for the child’s protection, the child should be placed in his emergency custody. Thus, the mother was afforded due process as to that issue. See N.J.D., 110 So.3d at 391 (“ ‘ “ ‘[Procedural due process contemplates the basic requirements of a fair proceeding including an impartial hearing before a legally constituted court; an opportunity to present evidence and arguments; information regarding the claims of the opposing party; a reasonable opportunity to controvert the opposition’s claims; and representation by counsel if it is desired.’” (quoting Gilmore, 103 So.3d at 835, quoting in turn other cases)).
The mother has failed to cite any authority to the effect that a trial court deprives a party of due process by proceeding with a scheduled, duly noticed hearing when that party’s attorney is aware of that hearing but fails to attend or participate. It is well settled that “[t]his court will address only those issues properly presented and for which supporting authority has been cited.” Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996). “Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived.” White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008).
Out of an abundance of caution, however, we note that the mother clearly knew of her right to legal representation because she, in fact, was represented by legal counsel. Although the juvenile court delayed the hearing to allow the mother’s attorney time to arrive, the juvenile court acted within its discretion in proceeding with the hearing when, after a reasonable period, the mother’s attorney failed to appear. See, e.g., Eastern Dredging & Constr., Inc. v. Parliament House, L.L.C., 698 So.2d 102 (Ala.1997) (recognizing that a trial court has discretion as to how to manage proceedings before it); and Smith v. State, 961 So.2d 916, 924 (Ala.Crim.App.2006) (recognizing that a trial court has discretion to manage its own docket). The mother has failed to establish that the juvenile court clearly exceeded its discre *1069 tion by proceeding to conduct the hearing without the presence of her attorney.
Based on the above, we affirm the juvenile court’s September 23, 2014, order to the extent that the juvenile court awarded emergency custody of the child to the father. We reverse that order to the extent the juvenile court found the child to be dependent without providing proper notice to the mother, and we remand the cause to the juvenile court with instructions that it vacate the finding of dependency contained in the September 23, 2014, order and that it conduct a hearing on the child’s dependency as expeditiously as possible.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ„ concur.

. In S.K., supra, this court also recognized that the juvenile court had previously adjudicated the father's paternity of the child, thereby identifying another basis on which the juvenile court could have exercised its jurisdiction in that action. See id., relying on Ala.Code 1975, §§ 12-15-115(a)(6) (a juvenile court has original jurisdiction over actions to establish paternity, custody, and child support), and 12-15-117(c) (recognizing that a juvenile court retains jurisdiction over a child that has previously been before the juvenile court).

. We also note that, in this case, the St. Clair Juvenile Court had previously adjudicated the father's paternity of the child. The St. Clair Juvenile Court, which had continuing jurisdiction over the child, see Ala.Code 1975, § 12-15—117(c), transferred this action to the juvenile court.